Good morning, Your Honors. May it please the Court, Maliha Khan-Avila for the petitioner, a native and citizen of Cuba, Mr. Frank Mendez-Mestre. I would like to reserve any unused portion for my rebuttal. Thank you. Good morning, Your Honors. Petitioner here is a native and citizen of Cuba. He comes before the Court today to ask the Court to remand his matter specifically in regards to his applications for asylum and withholding of removal. Petitioner today will outline that his matter should be remanded specifically due to the immigration judges and the BIA's upholding of the facts and the law that the immigration judge applied in regards to the immigration judge's minimization and mischaracterization of the harm that Mr. Mendez-Mestre actually suffered and the erroneous finding of the immigration judge finding that Mr. Mendez did not suffer past persecution, has no well-founded fear of future persecution, and that he could actually internally relocate. Why don't you walk through specifically what is the past persecution, the events and incidents? Sure. Thank you, Your Honor. The immigration for a short period of time that he suffered some beatings with a baton, with some bruises and cuts to his eyebrows, and that later that he was simply invited and questioned by the police. That's an incorrect assertion. The facts are way more serious. In this regard, Petitioner was asked in September of 2018 by the Chief of Police to come to the station in regards to discussing his political affiliations. Can I interrupt you for a minute? Before that, the police chief had overheard him talking and threatened him at that point. What did he say at that point? The chief earlier, well, Mr. Frank Mendez had a discussion with a co-worker in regards to opposing the government's communist regime. And specifically, then the police asked him to come to the station in September of 2018. And when he got there, he was tied down. I thought that the police chief, when he overheard that conversation, said to him something like, I'm going to put you in jail, I'm going to disappear you. So there was a threat at that point. Yes, yes, he was jail as well, that he would put Mr. Mendez in jail and make him disappear if he continued to oppose the government. This is in the administrative record, 85 to 95. Specifically, that when he arrived at the police station, he was interrogated as to his political views and asked him if he had changed his views. And he said no. And then the police put handcuffs on his hands and feet, put him in a cold room, beat him on his legs, feet, and face, specifically his eyes, eyebrows, with a baton. He was then left for 24 hours with no food, no drink, in a freezing cell. His family didn't know where he was, and he had cuts and bruises all over his body. And after he was released, he was continuously asked to come back. Counsel, this is Judge Hollinson. How many beatings are you saying the record supports? The record shows one beating and also shows a detention in a cold cell for 24 hours with no food or drink. So counsel, what is the closest case that supports the view that those facts constitute persecution? What's your closest case? Sure. I have three, but I'll cite one in particular, which is Zhihui, Z-H-I-H-U-I, and last name is G-U-O, Guo V. Sessions, 897-F-3-1208, 2018 precedence, which granted a Chinese non-citizen petition because evidence compelled a finding of past persecution. In this case, the police arrested him while he was attending church services. He asserted he was a Christian. The officer struck him in the face twice, kicked him in the stomach, and detained him for a day and a half. The Ninth Circuit found in this case that a beating may constitute persecution even when there was no long-term effects and the petitioner does not seek medical attention. Indeed, the court says, it would be a strange rule if the absence or presence of a broken arm were the dispositive fact in determining whether a petitioner experienced past persecution. I would also cite a very recent case law in Flores Molina, 37-4-F-626-2022, which makes clear that incidents in which the immigration petitioner floods in the face of an immediate threat and physical violence or death, that those incidents rise to the level of persecution. I mean, what strikes me here is that the threats were, the BIA and the IJ did not deal at all with the threats or even mention them. Correct, and that's what is at issue because even if an applicant does not suffer physical violence, the court has consistently held that death threats alone could constitute persecution. Some share Sting v. Garland, 57-F-4-643, Ninth Circuit, 2023. Why do we understand these to be death threats? Did he ever actually say, I think he said in the application but not in the testimony that he specifically said they were going to kill him, but it's his understanding that it's, we're supposed to understand that disappear means they're going to kill him, is that? Yes, your honor. Is that a cue to speak for we're going to kill you or what? I'm sorry. Where is the, in the record, is the threat to disappear him? Because his testimony, he said he was threatened to be put in jail. Yes, your honor. It says he was threatened to put in jail, disappear, and the administrative record, 88. It was during his testimony, I believe, your honor. But the testimony as a whole is that he's going to put me in jail. It's not clear what make me disappear means. He doesn't say he threatened to kill me. Even if it's not just a threat of making him to kill him, the physical violence that was inflicted on him and then having him come in over and over again and he's testified that I would stay quiet. I didn't want to get beaten again. This is in the administrative record, 96 and 97. He's essentially being silenced. He is essentially being silenced and not being allowed to express his political opinion, which is exactly what the asylum laws protect. He's expected to keep quiet about his political affiliations so that he doesn't get beaten by the police in this horrific manner that he was. And I just wanted to address the fact that the judge also cites to the fact that Mr. Mendez would be able to relocate and that is simply because he was able to get a passport and that just isn't supported by law. His passport was May and September later on in the year. So that would not substantiate an internal relocation. The Ninth Circuit has emphasized that once a petitioner establishes past persecution, the burden is on the government to show the petitioner can reasonably relocate internally to an area that's safe. The court cautions that it cannot be said to have the ability to relocate within his home country if you would have to remain in hiding there. Shamashira Singh regarding 574643. Yes, your honor. Uh, what are we to make of the fact that he was able to obtain a passport to leave the country? Just because he was able, many people are able to obtain a passport and leave the country. As I stated, the passport was obtained in April of 2018. The incidents didn't occur until much later in 2018. So, because he was able to obtain that. Yes, your honor. Their record about what actually happens to people who leave Cuba and seek asylum in the United States and are then removed. I mean, the problem is that this only started happening a few years ago, and I don't really know how many people have actually been removed, but there doesn't seem to be at this point anything in their record about what happens to those people. Is that right? That is true, your honor, but the country condition reports outlines that the type of harm that is faced by these types of respondents, I mean, petitioners in Cuba. I would like to reserve, your honor, the 30 seconds I have left for rebuttal, please. We'll give you two minutes when you come back. I want to make sure that you've had a full please go ahead and then we'll give you two minutes if you want to go ahead and respond. Yes, yes. So, what I'm trying to the point that I'm trying to make is that that question, your honor, goes to the fear of future persecution. If we're able to establish simply here that there is past persecution, past persecution would therefore establish a rebuttable presumption of future future fear of future persecution. The country we're dealing with is Cuba. Cuba has massive gross human rights violations. So, therefore, what would happen to them if they are returned because we don't have any evidence of that doesn't negate the fact that he did suffer past persecution and that there's a rebuttable presumption of fear of future persecution, your honor. I hope that answered a little bit of your question. Thank you. Thank you. We'll give you two minutes when you come back and let's hear from the government. Thank you, your honors. May it please the court. My name is Jacqueline Shea and I represent the Attorney General of the United States. I ask this court to come to the following two conclusions. One, substantial evidence supports the agency's denial of asylum and holding a removal because the petitioner had failed to establish past persecution or a well-founded fear of future persecution. And two, the board recently denied petitioner's motion to remand because he failed to demonstrate that the evidence in support of the board appeal was not previously unavailable. Your honors, substantial evidence supports the agency's determination that the petitioner failed to establish past persecution. This court in Swarma provided factors for this court to consider in evaluating whether it provides the level of persecution. Your honors, here there is no significant physical violence resulting in serious injuries. Petitioner does appear to somewhat overstate that he had cuts and bruises all over his body in their brief, but here it's clear from the record he had a cut in the eyebrow and some bruises on his legs and arms. And none of those... I thought our case law was that there doesn't have to be serious injury. I mean, if there is serious injury, that may demonstrate persecution, but the fact that there isn't serious injury, is that dispositive? No, your honor, because serious injury is just one of the many factors that this court should consider. However, this court did find in Swarma that it is one of the most critical factors in a case. And the second factor in this case would be that the police chief threatened him, and he only threatened him on one occasion. And your honor, you did point out about... Threatened him on two occasions. He threatened him when he met him on the street and he threatened him on the street. Yes, your honor, but there was no death threats. I mean... That depends what you think disappear means. And in his declaration in support of asylum, he says that he threatened, they kept threatening to incarcerate me and make me disappear after they killed me. So he understood disappear to mean they're going to kill him. He did at the time of the declaration, your honor, but when he had his testimony before the IJ, he did not bring up death threats in any occasion. He brought up disappear and disappear according to what he said in his declaration. Your honor, I believe he only brought up that he threatened to put him in jail in the record at 92. But even so, your honor, if you consider both of the declaration and that May 2nd incident as having a death threat or having him disappear, if you consider that and then the day of custody in September, several months have passed between that initial threat and the harm. Additionally, we go to another factor here, your honors. The detention here, it's clear from the record that it was 24 hours. The exact timeline during that 24 hours is a little unclear, but he was questioned for some time. There was some recesses and he was beat during that time. And then if you look for another factor here that was emphasized in this form was the harm here. Sustained was a single incident with the authorities. It's that September 11th, 2018. That was a single incident. Petitioner again overstates some of the facts of the record in their brief. He was not continually summons here. He came in for questioning on two separate occasions and there was a summons after he left. And he testified, he clearly testified that this was routinely done. He was not in custody or arrested on either of these occasions. In fact, the IJ asked twice after he explained the harm on the September incident if he had any other problems with the police and he responded no on each occasion on 95 and 110 of the record. Petitioner's family here was also not harmed or friends and there was no economic harm. Substantial evidence also supports the agency's determination that he failed to establish objectively reasonable well-founded fear of persecution. He was able to work and live in the same residence for seven months after this incident. His family also remained in Cuba, his mother and his son, and this shows that his family was not harmed. It undermines the fear of reasonable fear of persecution. Petitioner, also as your honor has brought up, he was able to leave Cuba with his passport in hand. I want to say something or ask you something. That seems the most questionable part to me. I mean, and the fact that a oppressive government is worried about your political views and is happy to have you leave doesn't seem to me to demonstrate anything about the fact that they are not going to harm you if you stay. The point is they don't want you there causing trouble. So if you leave, that's just fine. And that was true in Nazi Germany, for example. That's not the case here because in this particular case, I know there was no nexus finding here by the agency, but the time that he was actually threatened was he was overheard with political comments. But the other instances that he came in, it was routine as he was protesting in this case. It was not like the cases... But what they asked him when they brought him in was, have you changed your political opinion? And he says, well, I didn't answer them, but they were still interested in it. And your honor, I think the general country conditions in Cuba, that is something that provides some context. But this is not the type of case like Guba where he's in the church and caught at that time and persecuted against. I was just commenting, what bothered me most about this case, frankly, was the emphasis placed on the fact that he was able to leave. And the IJ repeated it many times. And it seems to me to cut in absolutely the opposite direction. I don't understand how it's supposed to support the notion that they were not interested in him. I see your point, your honor. But again, that is only also one factor. I mean, the fact that he was able to freely leave is something that was repeated by the IJ many times. And he seemed to think it was extremely strong in his mind. And I don't understand why. But then your honor, the board did also review that finding as well. And the totality of the petitioner's past experience and determined that there was no well-founded fear and nothing was exhausted as well to the board from the petitioner that would to that issue, your honor, so that the board could have had the opportunity to rectify that issue of the IJ. And again, another factor to consider in the well-founded fear was that his family remained there and has been unharmed. There also was no evidence in the record. Yes, your honor. First of all, I don't remember that being mentioned. And second of all, I don't understand the relevance of it. He was the one with the political opinion, not his mother or his son. So what does it demonstrate? Your honor, as it is formal in that particular case, the wife was after the husband had left. It was a political case as well. The wife was actually harassed in that case, and that was considered as a factor. Where in this case, the mother, maybe got a summons from the police for him, but in no way was harassed or harmed in any way. Where are you? Where in the record are you referring to regarding the family? The family, your honor, that was not harmed. Was it in his testimony or her? Yes, your honor. It was in his testimony that his mother and his son were in Cuba and that they were not harmed. Well, if you don't have it at the ready, I will find it. But your position is it's coming from his testimony? Yes, your honor. It's coming from his testimony that his family was still in Cuba and he did not make any mention that they were harmed at all. I believe he was asked about if they were harmed as well in the testimony, but I cannot point to us at this point at that, your honors. And some, the agency considered petitioner's evidence, applied the legal standards, and concluded he was not eligible for asylum and hold him a leave because he failed to demonstrate past persecution or a well-founded fear of future persecution. The record does not compel a finding contrary to the agency's determination. Additionally, the board's determination that the petitioner failed to establish the evidence in his board brief was previously in the record. Thank you, your honors. Thank you, Ms. Shea. Ms. Canavela, we'll hear rebuttal from you. Thank you, your honors. In regards to the, I'm going to address two factors very quickly in my response. I mean, petitioner's family remains in Cuba, that there is no well-founded fear of future persecution, and I find that to be unfounded because the mother and the son may very well have different political opinions than the petitioner himself. The son was five years old, as I understand it. Correct. The son's five years old. If his credible testimony that the judge found credible says that, his political opinion was a reason for him to be in custody, or this political opinion was a reason the chief of police was targeting him, then why would the police or the government go after his mother or his son unless they know what their political opinions are? Further, in regards to routine police visits, as the government categorizes it, it wasn't routine. He was told, he came in twice and he was asked, what's your political opinion? Have you changed it? He specifically said, I stayed quiet. I didn't want to get beaten up again. That's silencing someone for their political opinion. That isn't a routine police encounter. In fact, that would lead us to believe in a well-founded fear of future persecution because what's to say if he returns to Cuba, he's not, and, and, you know, he, they may know he applied for asylum in the United States, and then he has to, he's applied for asylum in the United States, and, and he's asked to come back to the police station over and over again in silence, continuously, or beaten, therefore. What are we to make of the fact that when he was called back into the police station, he was asked to be changed his political opinion. He didn't say no. He, he, he stayed silent according to his testimony. And yet at that point, neither point was he harmed. Correct. Yes. I'm staying silent, not being able to express your political opinion in the fear of being physically harmed amounts to what amounts to past persecution as well. Oh, I have 14 seconds. And in regards to the remand, your honor, basically, we would just say that he was trying to submit evidence that was previously not available to him. He had less than a month between the time he was given advisals and his merits hearing, he was pro se, and he did the best he could. And so when he obtained counsel during his, his BIA appeal, he decided he was. What was pertinent about any of that information? I didn't see what it was. The only pertinent factors is the fact that the mother submitted a letter, and her letter. What did the letter say? Her letter talked about her, her letter talked about his, his political opinion and the fact that he was targeted. So it just re-emphasized his testimony. Your honor. Thank you. Thank you very much, Ms. Cannavilla. Ms. Shea, thank you. I want to thank both counsel for the briefing and argument, and this matter is submitted.
judges: BERZON, RAWLINSON, BRESS